# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| RABIO DETHO, | § | |
| and ALL OTHERS | § | |
| SIMILARLY SITUATED | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-2160 |
| | § | |
| ASIA BILAL; | § | |
| SHEIKH MOHAMMED BILAL, | § | |
| TEXAS ONE PETROLEUM CORP d/b/a, | § | |
| RACEWAY # 6773; and | § | |
| GREEN SEA TRADING, INC. and | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

In this suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Rabio Detho alleges that Asia Bilal, Sheikh Mohammed Bilal, Texas One Petroleum Corp. d.b.a. Raceway #6773, and Green Sea Trading, Inc. failed to pay their employees overtime when they worked more than forty hours in a week. Detho seeks to represent a class of similarly situated employees. She has moved for issuance of notice to a conditionally certified class of employees who worked as "cashiers," "clerks," "gas-station attendants," or "gas-station clerks" for the defendants from July 5, 2004 to the present. (Docket Entry No. 20). The defendants have responded, (Docket Entry No. 21), and Detho has replied, (Docket Entry No. 23).

Based on the motion, response, and reply, the parties' submissions, and the applicable law, this court denies Detho's motion for the issuance of notice without prejudice to

resubmission if Detho is able to obtain information that other similarly situated employees wish to join the suit.  The reasons are set out in detail below.

## I.     Background

Texas One Petroleum Corp. operates a Raceway gas station in Houston, Texas. Texas One Petroleum Corp. was incorporated and purchased the gas station in August 2006. Asia Bilal is the president and sole shareholder of Texas One Petroleum.  Her husband, Sheikh Mohammed Bilal, manages and work as a cashier at the gas station twelve to fifteen hours each day.  The gas station is open to the public from 6:00 a.m. until 12:00 a.m. every day.  A single employee is at the gas station from midnight each night until six the following morning to stock the shelves.

Green Sea Trading, Inc. operates a Convenience Mart convenience store in Eunice, Texas.  Green Sea Trading, Inc. was incorporated and purchased this convenience store in February 2007.  Sheikh Mohammed Bilal was initially the sole shareholder of Green Sea Trading, but he transferred 49% of the shares to his sister in September 2007.

Detho has submitted an affidavit stating that she worked as a cashier at the Raceway gas station from January 5, 2007 to April 5, 2007 and that she was paid an hourly wage.  She stated that there was often only one employee working at the gas station per shift.  That employee was required to perform all cashier, cleaning, and stocking duties.  (Docket Entry No. 20, Ex. A at 1).  Detho stated that she worked twelve to fifteen hours per day seven days a week, but that she was not paid for hours worked in excess of forty hours per week or paid overtime rates when she worked more than forty hours in a week.  She also stated that she

2

never received her final paycheck.  (*Id.*, Ex. A at 2).

Detho's affidavit includes the following statement about other employees:

I believe there are many current and former employees of Defendants who may be interested in joining a collective action to recover for unpaid overtime compensation; however, although I can only recall the first names "Raj" and "Naeem," I certainly remember these male employees.  None of Raceway's employees were paid overtime.  Further, Defendants have at least one other location in Dallas, Texas.

(*Id.*).  Detho has also submitted affidavits from two customers stating that Detho worked at the Raceway gas station full-time for a number of months.[1]  (Docket Entry No. 23, Exs. B, C).

The defendants have submitted deposition testimony by Sheikh Mohammed Bilal stating that no employee apart from himself ever worked more than forty hours per week. He also stated that Detho only worked at the gas station for two weeks, from January 11, 2007 to January 23, 2007.  (Docket Entry No. 21, Ex. A at 11–12).

## II.    The Applicable Legal Standards

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action.  These methods are the two-step *Lusardi* approach and the spurious class action *Shushan* approach. *See Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).  In *Mooney v. Aramco Services Co.*, 54 F.3d 1207,

---

[1]One customer stated that Detho worked at the Raceway gas station from January to April 2007. Another customer, who was also a personal friend of Detho, stated that Detho worked at the Raceway gas station from January to June 2007.  The latter statement conflicts with Detho's statement that she worked at the gas station from January to April 2007.

1216 (5th Cir. 1995), the Fifth Circuit found it unnecessary to determine which method is most appropriate.  Most courts use the "two-step *ad hoc* approach" as the preferred method for making the similarly-situated analysis, rather than the Rule 23 requirements.  *See, e.g.*, *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (stating that the majority of courts have employed or implicitly approved the two-step method);  *Basco v. Wal-Mart Stores Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) (noting that "the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); *Lachapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective actions).

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Mooney*, 54 F.3d at 1213.  The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. *See id.* at 1213–14. The court's decision is often based only on the pleadings and affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id.* at 1214 n.8. Even this lenient standard appears to require

substantial allegations that potential members "were together the victims of a single decision, policy, or plan . . . ." *Id.* (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).  A factual basis for the allegations is needed to satisfy this first step.  *See Hall v. Burk*, No. Civ. 301CV2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983).  Some courts place an emphasis on finding "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency."  *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002)); *see also Basco*, 2004 WL 1497709, at *5 (quoting *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)).  "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").  If a court conditionally certifies a class, the action proceeds as a collective action during discovery.  *See Mooney*, 54 F.3d at 1214.

The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See id.*; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214; *Basco*, 2004 WL 1497709, at *3. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 508 (M.D. La. 2005).

Although the plaintiff has moved for notice and not conditional certification, notice does not issue unless the court conditionally certifies the case as a collective action. *See, e.g., Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1086 (S.D. Iowa 2007) ("Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court."); *Dominquez v. Minn. Beef Indus., Inc.*, No. 06-1002 (RHK/AJB), 2007 WL 2422837, at *2 (D. Minn. Aug. 21, 2007) ("If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).

## III.   Analysis

This case is at the "notice stage" of the *Lusardi* analysis. Because the parties have presented minimal evidence, in the form of affidavits, the decision whether to issue notice to potential class members is "made using a fairly lenient standard." *Mooney*, 54 F.3d at

6

1213.  At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt-in to the lawsuit.  *See Prater v. Commerce Equities Mgmt Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan.24, 2007).  As noted, most courts require some factual support for the complaint allegations of class-wide discrimination to authorize notice.  *See, e.g., Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266 (D. Minn. 1991) (allegations of plaintiff alone insufficient); *Felix de Asencio v. Tyson Foods Co.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (pleadings and four declarations from putative class members sufficient).  The parties dispute all three elements of the first-stage analysis.

The defendants contend that Detho's statement that "[n]one of Raceway's employees were paid overtime" does not provide a reasonable basis for crediting the assertions that aggrieved individuals exist because "Detho does not state any facts upon which this conclusory statement is based."  (Docket Entry No. 21 at 2).  In her affidavit, Detho asserted that her statement was based on personal knowledge gained over three months working at the gas station.  (Docket Entry No. 20, Ex. A).  Detho specifically names two other employees who were denied overtime.  *See H & R Block, Ltd. V. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (finding that whether potential plaintiffs have been identified is a relevant consideration in assessing whether potential plaintiffs are similarly situated).

7

Further, Detho points out that Sheikh Mohammed Bilal's own deposition testimony shows that other employees worked more than forty hours per week.  Bilal stated that one employee is scheduled to work six hours per day, seven days a week.  (Docket Entry No. 23, Ex. A at 17).  Detho has shown that it is reasonable to believe that there are other aggrieved employees of the Raceway gas station.

The evidence Detho submits relates only to the Raceway gas station.  The evidence does not provide even a minimal showing that there were aggrieved employees at the Convenience Mart in Eunice.  *See Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999) (limiting the class to employees of a single restaurant because "Plaintiffs have not made a showing that any hourly wage employee at any of Defendant's restaurants, other than at the restaurant in Dothan where the named, individual Plaintiffs and the individuals who have filed Notices of Consent to be a Party Plaintiff worked, was subjected to employment practices which potentially violated the FLSA").

The defendants assert that the other employees of the gas station are not similarly situated because Detho identifies herself as a "cashier," not as a "clerk," "gas-station attendant," or "gas-station clerk," and the night-shift did not employ "cashiers," only "stockers"; because one employee, Kazim Kahn, was "in charge" when Dilal was not present and filled out employees' time and attendance sheets, and as a result "may even have been an exempt employee under the FLSA"; because the other employees were legally permitted to work in the United States, but Detho was not; and because Detho has failed to show that the putative class members were subject to a plan or scheme to deny them overtime.  (Docket

8

Entry No. 21 at 5–7).

The putative class members in an FLSA collective-action suit must be similarly situated in terms of job requirements and payment. *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (citing *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)).  A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists.  *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007).  Detho stated that there was often only one employee working at the gas station per shift.  Detho stated that this single employee performed all cashiering, cleaning, and stocking duties.  (Docket Entry No. 20, Ex. A at 1).  The gas station employees were all paid on an hourly basis; they all worked at the same location; they had the same supervisor; and they had overlapping duties.  The fact that Detho seeks to include other employees with superficially different job titles or slightly different job duties (stocking at night as opposed to stocking and operating the cash register during the day) in the class does not defeat a finding that Detho and the other gas station employees are similarly situated.  *See Holbrook v. Smith & Hawken, Ltd.*,246 F.R.D. 103, 106 (D. Conn. 2007) ("The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated."); *Berger v. Cleveland Clinic Found.*, No. 1:05 CV 1508, 2007 WL 2902907, at *20–21 (N.D. Ohio Sept. 29, 2007) ("'[S]imilarly situated does not mean identically situated' . . . . the fact that many of the [putative class members] are respiratory therapists while Plaintiff is a respiratory technician does not, by itself, preclude a finding that the class members are similarly situated, as all

9

members of each position worked in the same department within the same building, had the same supervisor, and their job duties overlapped significantly.") (quoting *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006)); *Asencio*, 130 F. Supp. 2d at 663 (finding collective-action treatment proper when the putative class members worked at the same facility); *Harper*, 185 F.R.D. at 364–65  (certifying a class of restaurant workers consisting of servers, food and salad bar workers, cooks, dishwashers, cashiers, hostesses, bakers, and busboys who worked for an hourly wage).

Dilal's assertions about Kazim Kahn do not lead to a different result.  Although Dilal asserts that Kahn was "in charge" when Dilal was not present and filled out employees' time and attendance sheets, Dilal concedes that Kahn was not a manager.  Dilal does not assert that Kahn's basic job duties differed from those of the other employees at the gas station. (Docket Entry No. 23, Ex. A at 41).  Detho's eligibility to work in the United States has no bearing on whether she is similarly situated to other putative class members. *See In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) ("[I]t is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant.").  Detho has presented evidence that Bilal systematically failed to pay his employees overtime.  Detho has made the necessary minimal showing that she and the other employees at the Raceway gas station are similarly situated in terms of job requirements and pay.

The defendants assert that Detho is not similarly situated to employees of Green Sea Trading, Inc.  The defendants assert that this was a convenience store, not a gas station, and

that the only employee was Bilal's sister, who owned 49% of the store. (Docket Entry No. 21 at 2, 5). As discussed above, the evidence Detho submitted deals only with the Raceway gas station. Detho merely stated that "Defendants have at least one other location in Dallas, Texas." Detho has failed to make even a minimal showing that she is similarly situated to employees at the Convenience Mart. *See Harper*, 185 F.R.D. at 363–65.

The defendants also contend that Detho has not made a minimal showing that the members of the putative class want to opt-in to the lawsuit. "[A] plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007). "Affidavits from potential class members affirming their intention to join the suit are ideal for an analysis of whether 'the putative class members were together the victims of a single decision, policy, or plan.'" *Simmons*, 2007 WL 210008, at *9 (quoting *Mooney*, 54 F.3d at 1214 n.8); *see also D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (affidavits are advisable so an employer will "not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense"). "However, affidavits per se are not required and a named plaintiff may submit some other form of evidence that the additional aggrieved persons exist and want to join the suit." *Simmons*, 2007 WL 210008, at *9. "[A] district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Id.* (quoting *Dybach*, 942 F.2d at 1568) (internal quotations omitted). "It is conceivable that in certain circumstances,

such as when an employee worked for an employer for only a short period of time, it might be appropriate to permit some discovery as to the identity of other similarly situated employees," but "an FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action." *Parker*, 492 F. Supp. 2d at 1166, 1167 n.6.

Detho has not submitted either affidavits from other employees expressing an interest in opting in or any other evidence that other aggrieved employees want to join this suit. Detho states in her affidavit that she "believes" there are other employees "who may be interested in joining a collective action to recover for unpaid overtime compensation." She recalls the first names of two individuals who worked at the Raceway gas station and did not receive overtime pay, but there is no indication that these or other individuals might want to join this suit. Detho has not made even a minimal showing that the members of the putative class want to opt-in to the lawsuit. *See Prater*, 2007 WL 4146714, at *8–9 (finding that the plaintiffs had shown that similarly situated individuals sought to opt-in even though none of the potential plaintiffs submitted affidavits when the complaint was filed because additional plaintiffs had already joined the suit after filing and because there were allegations of retaliation and intimidation); *Parker*, 492 F. Supp. 2d at 1165 (finding that the plaintiffs' statements that other potential plaintiffs may exist was insufficient to show that other members of the putative class wanted to opt-in to the lawsuit); *Simmons*, 2007 WL 210008, at *9 ("Simmons has not presented any admissible evidence that [similarly situated individuals] seek to participate as plaintiffs in this case. Simmons' reliance on merely his own allegations that the putative class members exist and together were the victims of a

single decision, policy, or plan is insufficient to meet his burden on this third criterion for conditional certification and notice.").

Detho is permitted discovery that may enable her to determine whether there are other employees who want to opt in to this case. Her motion is denied without prejudice to resubmission if she is able to submit information showing that other similarly situated employees want to join the litigation.

## IV.    Conclusion

On the basis of the present record, Detho's motion for notice is denied, without prejudice to resubmission.

SIGNED on April 10, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

13